

EXHIBIT
3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

No. 10-20584

-vs-

Hon. Nancy G. Edmunds

D-3   SHARPE ENVIRONMENTAL TESTING & CONSULTING, INC.,

**Offense:** 18 USC §1341

**Maximum Penalty:** n/a

        Defendant.

**Maximum Fine:** $500,000

_____/

FILED
JAN 27 2011
CLERK'S OFFICE
DETROIT

### RULE 11 PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant SHARPE ENVIRONMENTAL TESTING & CONSULTING, INC., and the government agree as follows:

1. **GUILTY PLEA**

   A.  **Count of Conviction**

Defendant will enter a plea of guilty to **Count 3** of the indictment, which charges that defendant caused a document to be mailed in furtherance of a fraud scheme, in violation of Title 18, United States Code, Section 1341.

**B.**   **Elements of Offense**

The elements of Count 3 are:

1. Defendant had a scheme to commit fraud, or to obtain money by false pretenses;

2. The scheme included a material misrepresentation, or the concealment of a material fact;

3. Defendant had the intent to defraud;

4. The mails were used, in a foreseeable way, in furtherance of the scheme to defraud.

**C.**   **Factual Basis for Guilty Plea**

The following facts are a sufficient and accurate basis for defendant's guilty plea: From late 2004 through 2006 defendant SHARPE ENVIRONMENTAL TESTING & CONSULTING, INC. (SHARPE ENVIRONMENTAL), engaged in the business of conducting and purporting to conduct lead inspections of residences located in Southeast Michigan. The principal of SHARPE ENVIRONMENTAL was trained in lead inspection, and was aware that there existed a significant possibility that older residential properties contained lead paint, and if they did, the lead paint could pose a substantial health hazard to children and adults who lived in those properties. The principal of defendant was also aware during this time that private agencies administered federally funded assistance to

qualified private homeowners, to enable the homeowners to upgrade their homes. If the home being upgraded contained lead paint, the process of upgrading the home could disturb the lead paint and create a health hazard for the residents of the home. Therefore, after structural modifications were made to an older home, it was necessary to inspect the property to verify that the modification had not caused a lead hazard. Defendant purported to perform legitimate lead inspections on these properties to verify that they were free of lead hazards following the upgrades.

During this time, the principal of defendant SHARPE ENVIRONMENTAL devised a scheme to obtain money by false representations. It was a part of the scheme to defraud that defendant SHARPE ENVIRONMENTAL would purport to perform lead inspections supported by laboratory test results that came from the Detroit Health Department Laboratory, and would submit invoices for its inspections which purported to include the results of those tests, when in fact SHARPE ENVIRONMENTAL had no tests performed by that laboratory and the test results it provided were forgeries. Because defendant SHARPE ENVIRONMENTAL supported its purported lead inspections with false lab reports, neither the agency that engaged defendant's services nor the owners of the properties in question could know, on the basis of defendant's

inspections, whether or not those properties created a risk of lead poisoning for the children and adults who lived in them.

Defendant SHARPE ENVIRONMENTAL would then obtain payment for the lead hazard inspections based on those false lab reports. Those payments were sent to SHARPE ENVIRONMENTAL through the United States Mail. In particular, on about April 27, 2006, defendant SHARPE ENVIRONMENTAL received a payment check in the mail in the amount of $1600 from the Wayne Metropolitan Community Action Agency, which check was based in part on false lab reports SHARPE ENVIRONMENTAL submitted for properties located at 228 Richtner and 30 Hill in River Rouge and 2525 Margaret in Melvindale, for which it had previously submitted invoices to Wayne Metro. Had Wayne Metro been aware of the false lab reports, it would not have mailed this check to defendant.

2. **SENTENCING GUIDELINES**

  A. **Standard of Proof**

The Court will find sentencing factors by a preponderance of the evidence.

  B. **Agreed Guideline Range**

There are no sentencing guideline disputes. Except as provided below, defendant's guideline range is **a fine of $105,000 to $110,000**, as set forth on the attached worksheets. If the Court finds that defendant's criminal history category is

higher than reflected on the attached worksheets and if any such finding results in a guideline range higher than **a fine of $105,000-$210,000**, the higher guideline range becomes the range recommended by defendant and the government. The Court is not bound by this recommendation concerning the guideline range, and the defendant understands that it will have no right to withdraw its guilty plea if the Court does not follow this recommendation.

Neither party may take a position concerning the applicable guidelines that is different than as reflected in the attached worksheets, except as necessary to the Court's determination regarding subsections a) and b), above.

3. **SENTENCE**

The Court will impose a sentence pursuant to 18 U.S.C. §3553, and in doing so must consider the sentencing guideline range.

    A. **Fine**

Pursuant to Rule 11(c)(1)(B), the government makes a non-binding recommendation that the sentence be no more than the mid-point of the sentencing guideline range as determined by Paragraph 2B.

    B. **Special Assessment**

Defendant will pay a special assessment of **$400** and must provide the government with a receipt for the payment before sentence is imposed.

    C. **Restitution**

The Court shall order restitution to every identifiable victim of defendant's offenses. There is no agreement on restitution. The Court will determine who the victims are and the amounts of restitution they are owed.

4. **OTHER CHARGES**

If the Court accepts this agreement, the government will dismiss all remaining charges in this case.

5. **EACH PARTY'S RIGHT TO WITHDRAW FROM THIS AGREEMENT**

The recommendations in Part 3 are not binding on the Court. Defendant has no right to withdraw its guilty plea and the parties have no right to withdraw from this agreement if the Court decides not to follow them.

6. **WAIVER OF APPEAL**

Defendant waives any right it may have to appeal his conviction. If the sentence imposed does not exceed the maximum recommendation allowed by Part 3 of this agreement, defendant also waives any right it may have to appeal its sentence. If the sentence imposed is within the guideline range determined by Paragraph 2B the government agrees not to appeal the sentence, but retains its right to appeal any sentence below that range.

7. **CONSEQUENCES OF WITHDRAWAL OF GUILTY PLEA/VACATION OF CONVICTION**

If defendant is allowed to withdraw its guilty plea or if the conviction entered

...

pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against defendant within six months after the date the order vacating defendant's conviction or allowing him to withdraw its guilty plea becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea or to any conduct reflected in the attached worksheets, defendant waives its right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

### 8.   PARTIES TO PLEA AGREEMENT

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

### 9.   SCOPE OF PLEA AGREEMENT

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings and agreements between the parties concerning the subject matter of this plea agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly

incorporated into this agreement

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

**11. ACCEPTANCE OF AGREEMENT BY DEFENDANT**

This plea offer expires unless it has been received, fully signed, in the Office of the United States Attorney by **5:00 P.M. on 1/27/11**. The government reserves the right to modify or revoke this offer at any time before defendant pleads guilty.

BARBARA L. MCQUADE
United States Attorney

LYNN HELLAND
ASSISTANT UNITED STATES ATTORNEY

DATE: JANUARY 19, 2011

BY SIGNING BELOW, DEFENDANT ACKNOWLEDGES THAT IT HAS READ THIS ENTIRE DOCUMENT, UNDERSTANDS IT, AND AGREES TO ITS TERMS.

LEON WEISS
ATTORNEY FOR DEFENDANT

ANTHONY SHARPE
PRESIDENT
SHARPE ENVIRONMENTAL TESTING & CONSULTING, INC.

DATE: 1·27·2011